IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

DEBRA BURRESS,

    Plaintiff,

v.

                CIVIL NO.: WDQ-08-2622

DENNIS WINTERS, M.D.,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Debra Burress sued Dennis Winters, M.D. for medical malpractice, alleging that he negligently recommended and performed a spinal surgery in May 2007. Trial is scheduled for May 25, 2010. For the following reasons, the pending motions will be denied.

I. Motions to Exclude Expert Testimony

Both parties have filed motions to exclude or limit expert testimony. Under Rule 702, expert testimony is admissible if it will assist the trier of fact and is (1) "based upon sufficient facts or data," (2) "the product of reliable principals and methods, and" (3) "the principles and methods [have been applied] reliably to the facts of the case." Fed. R. Evid. 702. As the *Daubert* Court explained, evidence is admissible under Rule 702 if

"it rests on a reliable foundation and is relevant." *Daubert*, 509 U.S. at 597. The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence. *Id*. at 590.[1]

    A.    Winters's Motion to Exclude the Testimony of Raphael Minsky, Ed. D. (Paper No. 31)

Minsky, a rehabilitation psychologist, performed a psychological evaluation of Burress and prepared a "life care plan," which opines about Burress's current and future medical needs and estimates their cost. *See* Mot. to Exclude, Ex. D. Winters has moved to exclude Minsky from testifying as an expert because he is not a physician, and his opinions are not supported by a physician's recommendations. Winters has cited no authority in support of this argument. As Burress notes, numerous courts have permitted non-physicians to opine about future medical needs, even when their opinions are not supported by the recommendations of a physician. *See, e.g.*, *River v. Turbo Med. Ctr.*, 415 F.3d 162, 170-71 (1st Cir. 2005); *Payne v. Wyeth*, 2008 WL 5586824, *3-4 (E.D. Va. 2008). Further, Minsky has frequently testified about similar matters before other courts. *See* Raphael Minsky Dep. 5-7. Accordingly, Winters's motion to exclude will be denied.

---

[1] Because these matters are well-briefed and supported, no hearing is necessary. *See United States v. Davis*, 602 F. Supp. 2d 658, 663 (D. Md. 2009).

B. Burress's Motion to Preclude Joshua Ammerman, M.D. from Testifying About the Applicable Standard of Care (Paper No. 32)

Ammerman, a neurosurgeon, is Assistant Clinical Professor of Neurosurgery at George Washington University Hospital in Washington, D.C. He appears to have held that position since July 2007. Relying on the Maryland Patients' Access to Quality Health Care Act, Md. Code Ann., Cts. & Jud. Proc. § 3-2A-01 *et seq*,[2] Burress has moved to exclude Ammerman from testifying about

---

[2] Under § 3-2A-01 (c)(2)(ii) of the Act:

> In addition to any other qualification a health care provider who attests in a certificate of a qualified expert or testifies in relation to a proceeding before a panel or court concerning a defendant's compliance with or departure from standards of care:
>
> A. Shall have had clinical experience, provided consultation relating to clinical practice, or taught medicine in the defendant's specialty or a related field of health care, or in the field of health care in which the defendant provided care or treatment to the plaintiff, within 5 years of the date of the alleged act or omission giving rise to the cause of action; and
>
> B. Except as provided in item 2 of this subparagraph, if the defendant is board certified in a specialty, shall be board certified in the same or a related specialty as the defendant.

2. Item (ii)1B of this subparagraph does not apply if:

> A. The defendant was providing care or treatment to the plaintiff unrelated to the area in which the defendant is board certified; or
>
> B. The health care provider taught medicine in the defendant's specialty or a related field of health care.

Md. Code Ann., Cts. & Jud. Proc. § 3-2A-01.

the applicable standard of care.  The Maryland statute requires a health care provider who testifies about a board-certified defendant's compliance with a standard of care to be board certified or have taught medicine in the defendant's specialty. *See id*. § 3-2A-01(c)(2)(ii)(1)(B)-(2)(B).

Winters is board-certified in neurosurgery; Ammerman is not. It appears that Ammerman was appointed to a professorship in neurosurgery in July 2007, two months after Winter operated on Burress.  Burress contends that because Ammerman was not teaching when the operation took place, he is not eligible to testify under § 3-2A-01(c).  Even assuming that the Maryland statute governs the admission of expert testimony in this court, Ammerman meets the statute's standard, which requires that an expert have taught in the defendant's specialty "within 5 years of the date of the alleged act or omission giving rise to the cause of action."  *See id*. § 3-2A-01 (c)(2)(ii)(1)(A).  Accordingly, Burress's motion will be denied.

  C. Burress's Motion to Preclude Ammerman and Joel Winer, M.D. from Testifying About Causation (Paper Nos. 33, 34)

Burress has moved to preclude Ammerman and Joel Winer, M.D. from testifying about the cause of her injuries.  Her motions are virtually identical; both argue that the testimony should be excluded because the purported expert's opinions are "nothing more than unsupported speculation and conjecture."  Mot. to

4

Preclude (Ammerman) 5; Mot. to Preclude (Winer) 3. Ammerman and Winer will opine that Burress's injury was caused by her positioning on the operating table. They believe that this positioning was not because of Winters's negligence; records from the surgery indicate that Burress was placed in a position that accords with the standard for neurosurgery. They will testify that the standard position appears to have been wrong for Burress because of an anomaly in her anatomy that seems to have required a different position. Neither Ammerman nor Winer will opine about what this "anomaly" is; it is apparent from their depositions that they do not know. Thus, Burress argues that their opinions about the cause of her injuries is unsupported speculation and inadmissible.

Burress's argument conflates the issues of causation and negligence (*i.e.*, breach of the standard of care). Ammerman and Winer's theory of the cause of Burress's injuries was her position on the operating table. They appear to have arrived at this conclusion by physically examining her (Ammerman) and by reviewing her medical records (Winer). Ammerman explained the basis for his conclusion as a process of elimination. Describing Burress's injury, he stated:

> We have a nerve that lies outside the spine; so it can't be injured during surgery inside the spine. And the patient's clinical examination [and] electrical studies support a sciatic nerve dysfunction. And the most likely time that would occur, when we see [peripheral] nerve injuries during surgery . . . is

>during positioning. So that would be the most logical reasonable explanation in my mind.

Joshua Ammerman Dep. 39-40. Winer's conclusion was the result of similar reasoning: he began by noting the type of the injury and deduced that positioning was responsible. It is clear that Ammerman and Winer's conclusions that positioning was the cause of Burress's injury is properly supported by their examinations and their reasoning. Joel Winer Dep. 30-31.

Ammerman and Winer admitted that they could not say what *about* the positioning had caused Burress's injuries; the records from the surgery indicated that she had been placed in a standard position for a surgery of this kind. Given that the injury has occurred despite use of the standard position, Ammerman and Winer posited that the standard position must have been wrong for Burress. But their inability to explain Burress's idiosyncratic anatomy does not bear on their opinions as to the cause of Burress's injuries; the testimony about Burress's idiosyncratic anatomy is relevant to whether it was *foreseeable* to Winters that a nonstandard position was necessary for the safe performance of the surgery (*i.e.*, to whether he breached the standard of care). *See, e.g.*, Joel Winer Dep. 30-31.

It is unclear whether Ammerman and Winer will testify about whether Winters breached the standard of care. If they do, any concerns about the support for their opinion about Burress's anatomical abnormality may be addressed by cross-examination and

the presentation of competing expert testimony.[3]

II. Burress's Motion to Preclude Surveillance Video (Paper No. 35)

On April 12, 2010, Winters sent Burress a June 2009 surveillance video of her that he plans to introduce at trial.[4] Burress has moved to exclude the video arguing that she has been prejudiced by its late disclosure. Although it is true that discovery had been closed for more than a year, Burress has not demonstrated prejudice. She asserts that six weeks "is insufficient time to conduct adequate discovery and investigation with respect to the . . . creation, modification, and production of the . . . recording," but does not explain why this is so or why she has not previously brought this issue to the Court's attention. Burress has had sufficient time to prepare a response to the video for trial. Accordingly, her motion to exclude will be denied.

III. Conclusion

For the reasons stated above, the parties' pretrial motions will be denied.

| | |
|---|---|
| May 21, 2010 <br> Date | _____/s/_____ <br> William D. Quarles, Jr. <br> United States District Judge |

---

[3] "Vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

[4] Winters also provided the logs for the video surveillance.

7